**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTOFER DUMELLE, | ) | |
| | ) | |
| Plaintiff, | ) | 13 CV 1575 |
| | ) | |
| v. | ) | Judge ST. EVE |
| | ) | |
| The VILLAGE OF HANOVER PARK, et al. | ) | Magistrate Judge KIM |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
MADIGAN'S MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, KRISTOFER DUMELLE, by his attorneys, Hamilton Law Office, LLC, respectfully submits this memorandum of law in opposition to Defendant Madigan's motion to dismiss Plaintiff's First Amendment claim and in support of Plaintiff's motion for partial summary judgment on the same claim:

**INTRODUCTION**

This case arises out of the arrest of Plaintiff Kristofer DuMelle, a twenty-two year old resident of Hanover Park, who used his cell phone to openly record his encounter with on-duty Hanover Park police officer Santos Diaz. Defendant Officer Diaz tackled and arrested Plaintiff for recording him, and charged Plaintiff with a violation of the Illinois Eavesdropping Act ("the Act").

Though the Illinois Eavesdropping Act has been challenged, there is still no binding legal authority, state or federal, which has found the Act unconstitutional as applied to the audio recording of on-duty police officers. In the federal system, the Seventh Circuit has held that the Act is "likely unconstitutional," but the court fell short of actually holding it so. On remand, the district court in *ACLU v. Alvarez* found the Act unconstitutional as applied to the ACLU volunteers in and it enjoined the Act's enforcement against the ACLU in Cook County. Thereafter, on April 8, 2013, pursuant to an agreement reached between the Cook County State's Attorney and Plaintiff in this

case, this Court entered an order prohibiting the enforcement of the Eavesdropping Act against any person for the audio recording of on-duty police officers in Cook County. This order, however, applies only to Cook County, and does not protect this First Amendment activity in any of the other 101 counties in Illinois.

At the state level, neither the courts nor the legislature has provided clarity for the people of Illinois. A handful of Illinois circuit courts have found the Act unconstitutional. For example, a judge in Crawford County declared the Illinois Eavesdropping Act unconstitutional on September 15, 2011 in the criminal prosecution of Michael Allison. *See People v. Allison,* 09CF50. Defendant Madigan appealed this decision. However, she then withdrew her appeal in the *Allison* case prior to the Illinois Supreme Court deciding it. Thus, neither the Illinois Supreme Court nor any Appellate Court has had occasion to issue a binding opinion on the Eavesdropping Act's constitutionality. Moreover, the Illinois legislature has had ample opportunity to amend the Act to bring it in line with constitutional requirements, but has failed to do so.

Ultimately, Plaintiff and other citizens of the State of Illinois must risk their liberty to exercise their constitutional rights as guaranteed by the First Amendment. The people of the State of Illinois are left without clarity, and in fact, arrests and criminal prosecutions for recording on-duty police officers are still occurring. This Court has both the opportunity and the responsibility to provide this clarity by denying Defendant Madigan's motion to dismiss and entering partial summary judgment in Plaintiff's favor, declaring the Illinois Eavesdropping Act unconstitutional as applied to the audio recording of on-duty police officers.

## STATEMENT OF FACTS

Plaintiff refers this Court to Plaintiff's Local Rule 56.1(a)(3) Statement of Uncontested Facts.

# ARGUMENT

Count I of Plaintiff's complaint presents this Court with the question of whether the Illinois Eavesdropping Act violates the First Amendment as applied to the recording of on-duty police officers, as what Plaintiff did – and desires to do again. Defendant Madigan has moved to dismiss Plaintiff's First Amendment claim, essentially arguing that Plaintiff does not have standing to bring it. Plaintiff submits he not only has standing to bring his First Amendment claim, but also that he is entitled to summary judgment on it. There are no factual issues to be decided at trial on this claim, since there is no dispute that Plaintiff was arrested pursuant to the Illinois Eavesdropping Act for using his cell phone to audio record an on-duty police officer. The only issue for this Court to decide is whether the Illinois Eavesdropping statute as applied to the recording of on-duty police officers comports with the First Amendment. The Seventh Circuit has given this Court strong guidance on this issue, enabling this Court to make a ruling it can be confident the Seventh Circuit will uphold.

## I. DEFENDANT MADIGAN'S MOTION TO DISMISS SHOULD BE DENIED.

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim where there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). In considering a motion to dismiss pursuant to Rule 12(b)(1), the district court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993). Defendant Madigan alleges that Plaintiff's case is moot because Defendant Madigan has promised not to prosecute Plaintiff under the Eavesdropping Act for openly recording on-duty police officers, and, that therefore, this Court does not have jurisdiction. Defendant Madigan further asserts that she is protected from suit by the Eleventh Amendment. However, the Eavesdropping Act is still on the books and remains a credible threat to Plaintiff and others like him in the State of Illinois. Moreover, the Eleventh Amendment

does not preclude Plaintiff's claim, because Plaintiff is alleging on-going constitutional violation and seeks only declaratory and injunctive relief against Defendant Madigan. Madigan is sufficiently connected to the enforcement of and—contrary to argument otherwise—has the ability to enforce the Act. Thus, because Plaintiff satisfies the jurisdictional requirements to have his case heard in this Court and has adequately plead a claim for relief, Defendant Madigan's motion should be denied.

## A. This Case Is Not Moot, And This Court Has Jurisdiction To Rule On The Constitutionality Of The Illinois Eavesdropping Act.

Article III of the Constitution confers jurisdiction on the federal courts over actual "cases" and "controversies." *Ovadal v. City of Madison*, 469 F.3d 625, 628 (7th Cir. 2006) (citing U.S. CONST. Art. III §2, cl. 1). When circumstances change during litigation such that there is no longer any case or controversy, the case is moot. *Ovadal*, 469 F.3d at 628 (citing *Powell v. McCormack*, 395 U.S. 486 (1969)). A case is considered moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell*, 395 U.S. at 496. The Supreme Court has held that the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of the power to hear and determine the case, *i.e.*, does not make the case moot." *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1975) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). The Court has also stated that "[t]he burden of demonstrating mootness is a heavy one." *Davis*, 440 U.S. at 633.

To establish mootness, a defendant must demonstrate that two conditions have been met: (1) there is no reasonable expectation that the alleged wrong(s) will be repeated; and (2) interim events have *completely and irrevocably* eradicated the effects of the alleged violation. *Id.* at 631 (emphasis added). Only when both conditions are satisfied is the case moot, because neither party has a legally cognizable interest in the final determination of the underlying facts and law. *Id.* Plaintiff maintains that application of this standard to the facts now before the Court shows that this case is not moot.

Here, there remains a reasonable expectation that Plaintiff will be arrested again if he tries to record a future interaction with a police officer outside Cook County.

Plaintiff respectfully asks that this Court consider certain facts, also relied upon by other courts in analyzing whether a "case or controversy" exists under Article III of the Constitution. It should be noted that an analysis of the case law shows that two concepts of standing and mootness overlap, since they both pertain to whether a case even belongs in federal court. The Supreme Court once referred to these doctrines as being different "manifestations – each having its own 'varied application' to the requirement that a court have jurisdiction." *Poe v. Ullman*, 367 U.S. 497, 503-04 (1961). Some legal commentators have in fact suggested that the doctrines (along with the concept of "ripeness") are often indistinguishable. *See, e.g.*, Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 Conn. L. Rev. 677, 681 (1990).

1. **The Illinois Eavesdropping Act Has Been Used As A Basis To Arrest And Prosecute Plaintiff.**

It is undisputed that the Act was enforced against Plaintiff in this case. *PSOF*, at ¶15. Plaintiff was plainly arrested by an officer who practically recited the elements of criminal eavesdropping as he advanced on Plaintiff. *PSOF*, at ¶¶12-15. Plaintiff was then tackled to the ground, handcuffed, placed in the back of a police car, driven to the police station where he was processed, and then held in custody for several hours. *PSOF*, at ¶13. Plaintiff was then charged with attempt eavesdropping. *PSOF*, at ¶15.

Plaintiff's arrest on October 11, 2011, and his subsequent prosecution, support his fear that the Act will continue to be enforced against him. The case of *Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987) is analogous to Plaintiff's situation here. In *Wilson*, a person was arrested (but not formally charged) for violating an Oklahoma law banning the distribution of anonymous campaign literature. *Wilson*, 819 F.2d at 945. While the local prosecutor was still contemplating whether to bring charges,

the plaintiff filed a federal lawsuit seeking declaratory and injunctive relief, arguing that the law violated the First Amendment. *Id.* The plaintiff sued both the local district attorney and the Oklahoma Attorney General. *Id.* The district court granted summary judgment in favor of the plaintiff, and both prosecutors' offices appealed, claiming that no case or controversy existed. *Id.* at 945-46. The Tenth Circuit affirmed the district court's grant of summary judgment for the plaintiff, noting that the plaintiff "was arrested for violating the statute he now challenges. Moreover, he…presented sworn testimony that he wishes to continue the conduct which precipitated his arrest, but has not done so for fear of rearrest." *Id.* at 946. The same fact was relied on more recently by the same court in *Ward v. Utah*, 321 F.3d 1266 (10th Cir. 2003), where the federal court found jurisdiction existed over a plaintiff who wanted to challenge the Utah hate crime law that he had been arrested for violating. *Ward*, 321 F.3d at 1269. Plaintiff in this case is in the exact same position as the plaintiffs in *Wilson* and *Ward*. He wants to engage in certain activity that is protected under the First Amendment, but the experience of being arrested and prosecuted is causing him to refrain because the law that was the basis of his arrest is still on the books.

### 2. The Illinois Eavesdropping Act Has Been Used To Arrest And Prosecute Others.

Prior and subsequent prosecutions for violations of the Illinois Eavesdropping Act reinforce the reasonable fear of prosecution Plaintiff has in this case. The widespread enforcement of a statute against others bolsters the credibility of a plaintiff's own fear of prosecution under the same statute. In *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) (en banc), the court noted that a fear of government prosecution is credible if there is a "history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. In that case, the Ninth Circuit found that there had been zero history of prosecutions under the statute being challenged. *Id.* at 1140; *see also Lopez v. Candaele*, 630 F.3d 775, 786-87 (9th Cir. 2010) (internal citations omitted) ("A history of past enforcement against parties similarly situated to the plaintiffs cuts in favor of a

conclusion that a threat is specific and credible.") In the instant case, prosecutors have enforced the Eavesdropping Act not just against Plaintiff himself, but widely against others in Illinois. *PSOF*, at ¶18; *ACLU v. Alvarez*, 679 F.3d 583, 593 n.2 (7th Cir. 2012) (citing numerous instances of the Act's enforcement).

Defendant Madigan relies on *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485 (7th Cir. 2004), where the court found that no case or controversy existed concerning a state campaign finance law that was being challenged. *Schober*, 366 F.3d at 491. However, in that case, the law was challenged *before* it even went into effect. Thus, there was no history of enforcement of the law in question, unlike what we have seen in Illinois with the Eavesdropping Act, which has been, and continues to be, used by police to arrest and prosecute individuals for audio recording on duty police officers.

In addition, in *Schober*, the Wisconsin Attorney General filed a petition with the Wisconsin Supreme Court seeking its own declaratory judgment on the constitutionality of the challenged law, and did so even before it became effective. *Id.* at 487. In that petition, the Wisconsin Attorney to a public position and pointedly stated that the newly enacted provisions "could not be defended because they are plainly in conflict with well-established constitutional principles." *Id.* In Illinois, however, the Attorney General's Office was actually part of the prosecution team in the downstate eavesdropping case of Michael Allison. Defendant Madigan was the one who appealed the circuit court's finding that the Act was unconstitutional, and she was also was the one who withdrew that appeal before the Illinois Supreme Court could decide the case and provide the state with the clarity Plaintiff must now seek from this Court.

### 3.  The Illinois Eavesdropping Act Has Not Been Repealed Or Amended.

The Illinois Eavesdropping Act has certainly been vigorously challenged in recent years, and this led to efforts in the Illinois General Assembly to amend it so that it is no longer a crime for people to record a police officer in public. *Def. Madigan's Mem.*, Exhibit E. In general, a State's

amendment or repeal of a statute that offends the Constitution will result in a finding of mootness. *See Bigelow v. Virginia*, 421 U.S. 809, 817-18 (1975) (finding that an amendment to the challenged statute while a person's challenge to it was being litigated eliminated any possibility that the statute's former version would "be applied again to [the defendant] or [would] chill the rights of others.") However, efforts to repeal or amend the Act have failed so far, and the Act remains on the books. There is obviously still some political support for keeping the current criminal penalties in place for those who audio record police officers in public in Illinois. This fact provides further support for Plaintiff's fear of being prosecuted under the Act again.

The Seventh Circuit's decision in *Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) illustrates why Plaintiff still faces the threat of arrest and prosecution for eavesdropping as long as the Illinois Eavesdropping Act remains in force. In *Bell*, a Chicago ordinance criminalized an individual's refusal to leave a scene when so instructed by a police officer when three or more individuals are engaging in disorderly conduct nearby. *Id.* at 449. Plaintiff Bell was participating in an anti-war protest in downtown Chicago when another protester was arrested for advancing on a police officer. *Id.* at 450. Plaintiff Bell and two other protesters approached the police officer, demanding that he release the protester who had been arrested. *Id.* When plaintiff Bell refused to back off, the police officer arrested him under the ordinance for refusing to leave the scene. *Id.*

Bell sued the City of Chicago and its police officers, alleging that the ordinance violated the First and Fourteenth Amendment. *Id.* He sought declaratory relief and a permanent injunction barring enforcement of the ordinance, which the district court denied. *Id.* The district court then dismissed plaintiff Bell's First and Fourteenth Amendment challenges, holding that he lacked standing to apply for injunctive relief because he failed to demonstrate a likelihood of repeat or future injury under the ordinance. *Id.* Plaintiff Bell appealed. *Id.*

The Seventh Circuit reversed and remanded the district court's dismissal of plaintiff Bell's constitutional challenge. *Id.* at 464. The court explained that "a plaintiff who wishes to engage in conduct protected arguably by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury." *Id.* at 451 (citing *Alvarez*, 679 F.3d at 590-91). This is because "[t]he existence of the statute constitutes the government's commitment to prosecute in accordance with it, and thus, a concrete prospect of future harm for one who would flout it." *Id.* The Seventh Circuit held that plaintiff Bell's suit to enjoin enforcement of the ordinance was appropriate and declared the statute partially invalid. *Id.* at 449.

*Bell* teaches that when the State enforces a criminal statute against an individual in violation of his constitutional rights, that individual is entitled to declaratory relief so long as the statute remains on the books. Just like the plaintiff in *Bell*, Plaintiff here has already been arrested under a statute that violates his First Amendment rights. And just like the unconstitutional ordinance in *Bell*, the Illinois Eavesdropping Act remains in force while Plaintiff's constitutional challenge is pending. There is nothing more that needs to happen for this Court to declare the Illinois Eavesdropping Act unconstitutional. Certainly, Plaintiff does not need to expose himself to another arrest or prosecution to challenge a statute that deters the exercise of his constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Therefore, because the continued existence of the Illinois Eavesdropping Act alone is enough to threaten Plaintiff with future arrest and prosecution, Plaintiff has demonstrated a genuine threat of enforcement.

### 4. The Tenure Of The Illinois Attorney General, Along With The Discretionary Authority Inherent In Her Position, Require This Court To Retain Jurisdiction.

Plaintiff is entitled to a ruling from this Court on his challenge to the constitutionality of the Act, and Defendant Madigan's assurances that she will not use the law against him do not deprive this Court of jurisdiction. In analyzing this issue, courts consider the discretion and tenure of the

government officials making the assurances of non-enforcement. This factor is important because, even if the government has represented that it will not enforce the statute, it can always change its mind. For example, in *United States v. Stevens*, 130 S. Ct. 1577 (2010), the Supreme Court held that a federal law banning the possession of certain depictions of animal cruelty was unconstitutional under the First Amendment. *Stevens*, 130 S. Ct. at 1579. The government's defense of the law included promises that it would only use the new law responsibly, to target depictions of "extreme cruelty." *Id.* at 1581. But the Supreme Court stated that "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Id.* at 1591.

Another example of this analysis can be found in *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000), where an advocacy organization sued to challenge a state campaign finance law that it believed infringed on the First Amendment. *Sorrell*, 221 F.3d at 379. The state attorney general and the local state's attorney were named as defendants. *Id.* The organization feared that if they engaged in certain speech, the prosecutors would sue them. *Id.* at 381. The defendants insisted that they had no intention of using the challenged provisions of the law in question, so therefore the plaintiff had no standing. *Id.* at 383. But the Second Circuit rejected this argument, holding that "[w]hile that may be so, there is nothing that prevents the State from changing its mind. It is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation." *Id.* Other examples of courts that have held that a prosecutor's assurances concerning future use of a law challenged under the First Amendment did not defeat jurisdiction include *Vittitow v. City of Upper Arlington*, 43 F.3d 1100 (6th Cir. 1995) (explaining that "it is not clear that counsel can bind either the legislative body of the City or its police department.") and *Solomon v. City of Gainesville*, 763 F.3d 1212 (11th Cir. 1985) (finding jurisdiction existed even though *prior to the lawsuit being filed*, defendant

10

"instructed its City Manager to discontinue any and all prosecutorial action now and in the future"
under the challenged ordinance).

Additionally, one law enforcement official's philosophy or interpretation of the law may not
be the same as another's interpretation of the law. Defendant Madigan will not be in office forever.
Neither Plaintiff nor the people of the State of Illinois have any way of knowing whether future
Illinois Attorney Generals will consider themselves bound by the promises Defendant Madigan has
made in this litigation. The Seventh Circuit considered this factor in *Kucharek v. Hanaway*, 902 F.2d
513 (7th Cir. 1990), a First Amendment challenge to the Wisconsin obscenity law which included
the state attorney general as a defendant. In addressing the position that the prosecutor took in the
litigation (*i.e.*, that his interpretation of the law and plans for enforcing it obviated any constitutional
problems with the law), the court noted that "he may change his mind about the meaning of the
statute; and he may be replaced in office." *Kucharek*, 902 F.2d at 519; *see Brown v. Herbert*, No. 11 CV
652, 2012 WL 3580669, at *4 (D. Utah, Aug. 17, 2012) (stating that "there is no reason to believe"
that a prosecutor's representation of non-prosecution is "anything beyond an exercise of
prosecutorial discretion that could be easily reversed in the future by a successor [county attorney],
or by [the prosecutor himself], if he should change his mind."); *see also Citizens for Responsible Gov't v.
Davidson*, 236 F.3d 1174, 1192-93 (10th Cir. 2002) (finding that the plaintiff faced a credible threat of
prosecution even though the state had insisted throughout litigation it would not prosecute groups
like the plaintiff since the state's assertions during the litigation were not binding on future
administrations and were "insufficient to overcome the [present] chilling effect of the statute's plain
language.").

**B. The Eleventh Amendment Does Not Bar Plaintiff's Suit Against Defendant Attorney General Madigan.**

Defendant Lisa Madigan argues that the Eleventh Amendment bars the Plaintiff's claims against her. She incorrectly contends that the exception to state sovereign immunity first recognized in *Ex Parte Young,* 209 U.S. 123 (1908), requires two elements: that the state officer have "some connection" to the enforcement of the statute and that the officer "threaten" to enforce it. *Def. Madigan's Mem.,* at 7. Plaintiff submits, however, that the alleged "threat to enforce" requirement is unsupported by any Seventh Circuit or Supreme Court decision and it is not required. Since Defendant Madigan concedes that she meets the "some connection" requirement, *Def. Madigan's Memo.*, at 8 n.4, and Plaintiff seeks only prospective relief on his First Amendment claim, the Eleventh Amendment does not bar Plaintiff's claim.

**1. Plaintiff's Complaint Sufficiently Alleges On-going Constitutional Violations And Seeks Only Declaratory And Injunctive Relief Against Defendant Madigan in her Official Capacity As Attorney General.**

Plaintiff seeks only prospective relief on his First Amendment claim. The Supreme Court recently reaffirmed that to decide the Eleventh Amendment issue, this Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Md., Inc. v. Pub. Serv. Comm'n. of Md.*, 535 U.S. 635, 645 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)). Ordinarily, a simple allegation of a continuing violation of federal law combined with a request for prospective relief is adequate. *Coeur d'Alene Tribe of Idaho,* 521 U.S. at 281. Thus, in a case where state officials are charged with enforcement of a law asserted to violate the First Amendment, the alleged ongoing violation of federal law sufficiently satisfies this inquiry. *Entm't Software Ass'n. v. Blagojevich,* 469 F.3d 641, 645 (7th

Cir. 2006). By their very nature, injunctions are prospective and are therefore a proper form of relief under *Ex Parte Young. Verizon Md., Inc.*, 535 U.S. at 645-46.

Plaintiff sufficiently alleges in his complaint that he wishes to remedy an ongoing violation of the U.S. Constitution. *PSOF*, at ¶37. Plaintiff's complaint clearly seeks only prospective relief on his First Amendment claim, by requesting declaratory and prospective injunctive relief to prevent further constitutional violations as a result of an unconstitutional statute. *PSOF*, at ¶37. Plaintiff's complaint passes the Supreme Court's straightforward inquiry test and the Eleventh Amendment does not bar his First Amendment claim.

### 2. Defendant Madigan Has Sufficient Connection To The Enforcement Of The Illinois Eavesdropping Statute To Be A Proper Party To This Suit.

Plaintiff does not dispute that the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity requires that the state official have "some connection" to the enforcement of the challenged statute. *See Ex Parte Young*, 209 U.S. at 156. However, this requirement is fulfilled by the mere the *ability* to enforce the law, even where neither the statute nor the officer's primary duties explicitly authorize any enforcement power. *Entm't Software Ass'n*, 469 F.3d at 645. Defendant Madigan concedes that she has the ability to enforce the Illinois Eavesdropping Act, and thus has the requisite connection to satisfy *Ex Parte Young. Def. Madigan's Mem.*, at 8 n.4.

Defendant Madigan is a duly elected public official of the State of Illinois, and the chief legal officer for the State of Illinois. *PSOF*, at ¶5. In fact, if Plaintiff had not named Defendant Madigan, Federal Rule of Civil Procedure 5.1(a)(2) would have required Plaintiff and this Court to notify and serve her, and would have allowed her the opportunity to intervene to defend the state statute as the state's legal representative:

Rule 5.1. Constitutional Challenge to a Statute — Notice, Certification, and Intervention

(a) NOTICE BY A PARTY. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:

\* \* \*

(2) serve the notice and paper on the Attorney General of the United States if a
federal statute is questioned — or on the state attorney general if a state statute is
questioned — either by certified or registered mail or by sending it to an electronic
address designated by the attorney general for this purpose.

(b) CERTIFICATION BY THE COURT. The court must, under 28 U.S.C.§ 2403,
certify to the appropriate attorney general that a statute has been questioned.

(c) INTERVENTION; FINAL DECISION ON THE MERITS. Unless the court sets a
later time, the attorney general may intervene within 60 days after the notice is filed or
after the court certifies the challenge, whichever is earlier. Before the time to intervene
expires, the court may reject the constitutional challenge, but may not enter a final
judgment holding the statute unconstitutional.

Thus, as a practical matter, federal law recognizes that the state attorney general has a
significant enough connection to the enforcement of all state statutes, that it specifically grants her
the right to intervene in any suit challenging the unconstitutionality of any state statute. In addition,
Defendant Madigan was the one who appealed the first downstate finding of unconstitutionality in
the *Allison* case, and she was the one who withdrew that appeal before the Illinois Supreme Court
could provide clarity on the issue. Defendant Madigan clearly has the requisite connection to the
enforcement of the Illinois Eavesdropping Act to be a proper party to this suit.

**3. The Seventh Circuit Has Never Recognized A Threat To Enforce Requirement;
Plaintiff Need Only Show That His Fear Of Consequences Is Not "Imaginative
Or Speculative."**

Defendant Madigan argues that she is not a proper defendant in this matter because she has
not threatened to prosecute violations of Illinois' Eavesdropping Statute. Defendant's contention
that *Ex Parte Young* requires that the state official threaten to enforce the statute is unfounded.
Defendant Madigan cites *Ex Parte Young* for the proposition that there must be a "threat to
enforce." However, no such principle is found in *Ex Parte Young*, and several significant cases point
in exactly the opposite direction. Defendant's argument here ignores the Seventh Circuit's recent

14

decision in *Entertainment Software Association*, which does not mention a threat to enforce requirement. 469 F.3d at 644-45. On the contrary, the plaintiffs in that case brought suit one day after enactment of the statute and did not claim that a state officer had threatened to enforce it. *Id.* at 643. In addition, the court in that case specifically rejected a broad reading of an earlier decision that the defendants purported required a threat of enforcement. *Id.* at 645 (citing *Sherman v. Cmty Consol. Sch. Dist. 21 of Wheeling Twp.,* 980 F.2d 437 (7th Cir. 1992)). Rather, the proper focus is that there is an ongoing violation of federal law by state officials that demands federal intervention. *Verizon Md., Inc.,* 535 U.S. at 645; s*ee also Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1338 (11th Cir. 1999).

Since Defendant Lisa Madigan concedes that she has the requisite connection to the enforcement of the statute, *Def. Madigan's Mem.*, at 8 n.4, and since Plaintiff seeks only prospective relief against enforcement of an unconstitutional statute, *PSOF,* at ¶37, Defendant Madigan's Eleventh Amendment argument fails.

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS FIRST AMENDMENT CLAIM.

Federal Rule of Civil Procedure 56(a) provides that a district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). While "[a]ll factual inferences are to be taken against the moving party in favor of the opposing party," *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1980). Summary judgment "must be granted when there is no genuine dispute over a material fact." *Anderson v. P.A. Radocy & Sons, Inc.,* 67 F.3d 619, 619 (7th Cir. 1995). Either party may move for summary judgment at any time, even as early as the commencement of the action and before the defendant has answered the complaint. FED. R. CIV. P. 56(a) *et seq.*, advisory committee's note; *See also First Am. Bank, N.A. v. United Equity Corp.,* 89 F.R.D.

15

81, 87 (D.D.C. 1981). Because there are no genuine issues of material facts with respect to Plaintiff's First Amendment claim, summary judgment should be entered in his favor.

**A. There Are No Issues Of Material Fact With Respect Plaintiff's Arrest And Prosecution Under The Illinois Eavesdropping Act, Thus, This Court May Determine If He Was Arrested And Prosecuted For Engaging In First Amendment Protected Activity.**

It is beyond dispute in this case that Plaintiff was arrested for audio recording an on-duty police officer without the officer's permission. Because there is no genuine issue of material fact as to why, and for what offense, Plaintiff was arrested and charged, this Court can find, as a matter of law, that he was arrested and prosecuted for engaging in First Amendment protected activity.

It is undisputed, and cannot be disputed, that Plaintiff's intention in recording Defendant Diaz was to gather evidence of what he believed to be unlawful police conduct. *PSOF*, at ¶¶10-11. Plaintiff felt threatened by Officer Diaz's manner and questioning of him and his friends. *PSOF*, at ¶11. It is also beyond dispute that at the time Plaintiff recorded this conversation, Defendant Diaz was on duty as a Hanover Park police officer and performing his official duties. Defendant Diaz operating a police squad car, in police uniform, and conducting a public stop of Plaintiff and his friends. *PSOF*, at ¶¶7, 9. The recording also reveals that Defendant Diaz's speech was at a normal volume that could have been overheard by a passerby and that Plaintiff's recording was open and obvious. *PSOF*, at ¶8.

If not for the Illinois Eavesdropping Act, there would have been nothing unlawful about Plaintiff's recording of his conversation with Defendant Officer Diaz. Plaintiff was not interfering with the arrest of another, or in any way impeding the performance of Officer Diaz's police duties. *PSOF*, at ¶¶6-12. He did not put himself or anyone in danger by utilizing his mobile phone to record this conversation which occurred on a public sidewalk. *PSOF*, at ¶9. Plaintiff responded to Defendant Diaz when spoken to, he did not raise his voice, and he even offered twice to delete his

mobile phone video, even after being tackled to the ground by Defendant Diaz for no valid reason.

*PSOF*, at ¶¶12-14. If not for the Illinois Eavesdropping Act, there would be nothing unlawful about

Plaintiff audio recording his stop and arrest.

Finally, the mobile phone video makes it impossible to dispute that Plaintiff was arrested and

prosecuted for eavesdropping as opposed to some other offense. As he got out of his squad car,

Defendant Diaz looked directly at Plaintiff holding up his mobile phone, and the following verbal

exchange occurred:

> DUMELLE: I live in Hanover Park.
>
> DIAZ: Are you recording me without my legal authorization?
>
> DUMELLE: Show me where it's illegal.
>
> DIAZ: I assure you that it will be illegal. Put your hands on – you're under arrest, okay?

*PSOF*, at ¶12.

Defendant Diaz practically recited the elements of criminal eavesdropping before tackling Plaintiff

to the ground. *PSOF*, at ¶¶12-13. Shortly thereafter, Defendant Diaz arrested and charged Plaintiff

with attempt eavesdropping. *PSOF*, at ¶15. There can be no doubt that Plaintiff was under arrest,

nor that he was arrested and prosecuted pursuant to the Illinois Eavesdropping Act for recording his

conversation with an on-duty police officer. Since there is no genuine issue of material fact as to

what led to Plaintiff's arrest and prosecution for eavesdropping, there is no need for a jury to make

any factual findings, and this Court may decide his First Amendment claim as a matter of law.

**B. Plaintiff Is Entitled To Summary Judgment On His First Amendment Claim Because The Illinois Eavesdropping Act Is Unconstitutional As Applied To Plaintiff And Others In Illinois Who Wish To Engage In Similar First Amendment Protected Activity By Recording On Duty Police Officers.**

The First Amendment prohibits any law "abridging the freedom of speech, or of the press."

U.S. CONST. AMEND. I. As applied to the recording of on-duty police officers in public places, the

Illinois Eavesdropping Act violates the First Amendment's guarantees of freedom of speech and freedom of the press. Illinois' Eavesdropping Act cannot pass intermediate scrutiny, and is therefore unconstitutional as applied to the open recording of on-duty police officers performing their public duties. In this case, Defendant Madigan no longer argues otherwise, and the Seventh Circuit's recent decision in *ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) supports this conclusion.

### 1. The Illinois Eavesdropping Act Is Abnormally Broad And Severe.

The Illinois Eavesdropping Act is the broadest law of its kind in the nation. *Alvarez*, 679 F.3d at 595 n.4. It criminalizes all nonconsensual audio recording of conversations, even if the conversations are not private. Specifically, the Act provides that "[a] person commits eavesdropping when he…[k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation…unless he does so…with the consent of all the parties to such conversation." *PSOF*, at ¶16. The Act defines an "eavesdropping device" as "any device capable of being used to hear or record oral conversation," and "conversation" as "any oral communication between 2 or more persons *regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation.*" *PSOF*, at ¶16 (emphasis added).

The Act contains certain exemptions when it is the police who are doing the recording. For example, the Act does not criminalize "[r]ecordings made simultaneously with the use of an in-car video camera recording of an oral conversation between a uniformed peace officer, who has identified his or her office, and a person in the presence of the peace officer whenever…an officer assigned a patrol vehicle is conducting an enforcement stop." *PSOF*, at ¶17. The Act defines an "enforcement stop" as "an action by a law enforcement officer in relation to enforcement and investigation duties, including…traffic stops." *PSOF*, at ¶17. However, there is no exemption for citizens recording police officers who are speaking while performing their duties in public places. In

fact, recording a private citizen is a Class 4 felony, but the Act makes recording a police officer a Class 1 felony. *PSOF*, at ¶17.

### 2. The Illinois Eavesdropping Act Impermissibly Burdens First Amendment Activity.

The Illinois Eavesdropping Act's main constitutional flaw is that it criminalizes all nonconsensual audio recording of conversations regardless of whether the conversation in question is private. The First Amendment protects Plaintiff and others like him from Illinois' broad ban on basic speech, press and petitioning activities.

### *i. Freedom Of Speech Protects The Right To Record Police Officers.*

"Audio and audiovisual recording are commonly used for the preservation and dissemination of information and ideas and thus are 'included within the free speech and press guaranty of the First and Fourteenth Amendments.'" *Alvarez*, 679 F.3d at 595 (quoting *Burstyn v. Wilson*, 343 U.S. 495, 502 (1952)). "Laws that restrict the use of expressive media have obvious effects on speech and press rights; the Supreme Court has 'voiced particular concern with laws that foreclose an entire medium of expression.'" *Id.* (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994) (collecting cases)).

The Illinois Eavesdropping Act's complete ban on nonconsensual audio recordings is illogical and unworkable in light of First Amendment jurisprudence. Though the Act only penalizes the making, not the broadcasting of recordings, the Seventh Circuit has explained, the "right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of *making* the recording is wholly unprotected." *Id.* (emphasis in original). The Illinois eavesdropping statute's flat ban on audio recording nonconsensual conversation makes it impossible for Plaintiff to publish or broadcast such recordings, and thus, cuts off his First Amendment right to free speech before he can even exercise it.

The Supreme Court has recognized that "the First Amendment is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. Federal Election Com'n*, 130 S. Ct. 876, 898 (2010). "Criminalizing all nonconsensual audio recording necessarily limits the information that might later be published or broadcast – whether to the general public or to a single family member or friend – and thus burdens First Amendment rights." *Alvarez*, 679 F.3d at 597. The Illinois Eavesdropping Act burdens important First Amendment interests because it severely penalizes the audio recording of police officers performing their official duties in public. Plaintiff plans to do exactly that. After several unpleasant encounters with local police, Plaintiff intends to hold police accountable for their treatment of him by ensuring that he has an objective audiovisual record in case he is arrested or prosecuted in the future. The Illinois Eavesdropping Act completely cuts off his ability to exercise his First Amendment right to freedom of speech.

### *ii. Freedom Of The Press Protects The Right To Record Police Officers.*

The Illinois Eavesdropping Act also burdens Plaintiff's right to freedom of the press. As applied to the audiovisual recording of on-duty police officers, it "interferes with the gathering and dissemination of information about government officials performing their duties in public." *Id.* at 600. The Act's complete ban on audio recording police officers conflicts with citizens observing and examining the work of government officials, and prevents them from publishing their findings to their fellow citizens. This broad censorship on the monitoring of government activity cannot be reconciled with the First Amendment.

Freedom of the press also begins with the right to gather information. The Supreme Court has recognized that "the First Amendment provides at least some protection for gathering news and information, particularly news and information about the affairs of government." *Id.* at 597-98 (quoting *Branzburg v. Haynes*, 408 U.S. 665, 681 (1972)). While the *Branzburg* Court did not create a

20

special "journalist's privilege" against enforcement of laws that burden First Amendment interests, its observation that "news gathering is not without its First Amendment protections," *Branzburg*, 408 U.S. at 707, is "consistent with the historical understanding of the First Amendment." *Alvarez*, 679 F.3d at 598-99. For example, in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court explained that "[f]ree speech carries with it some freedom to listen…'[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated.'" *Richmond Newspapers*, 448 U.S. at 576 (internal citation omitted).

The Illinois Eavesdropping Act cuts off Plaintiff's long-established right to gather and publish information about matters of public interest. The activity of on-duty police officers is a matter of public interest, particularly when that activity may include misconduct. In fact, the Seventh Circuit has observed that it "would be difficult to find a matter of greater public concern in a large metropolitan area than police protection and safety." *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990). Plaintiff and others like him seek to use widely available recording devices to protect themselves from unlawful arrests and excessive force, and to gather evidence of police misconduct for use in court and for publication. The Act makes it impossible for Plaintiff to do this without facing severe criminal penalties.

The right to gather and disseminate news about the public conduct of public officials extends to Plaintiff and citizens like him, even if they are not professional journalists. Widely-available recording devices like digital cameras and smart phones now allow individual citizens to record events happening in public places and then share them with others, often immediately. As the cell phone video in this case demonstrates, mobile recording technology can create complete and accurate records of the public activities of government officials. Thus, Plaintiff and concerned citizens like him can now monitor the activity of government officials, including police officers, without having to rely on traditional media. But the Illinois eavesdropping statute "specifically

targets communication technology; the use of an audio recorder – a medium of expression – triggers criminal liability. The law's legal sanction is directly leveled against the expressive element of an expressive activity." *Alvarez*, 679 F.3d at 602-03. The statute is, therefore, out of touch with today's methods of monitoring government activity, and violates the First Amendment's guarantee of freedom of the press.

The Illinois Eavesdropping Act is an abnormally broad and severe law that criminalizes all nonconsensual audio recordings of conversation. It creates especially harsh punishments for citizens openly recording police officers performing their official duties in public, and criminalizes communications that the First Amendment's guarantees of freedom of speech and freedom of the press protect.

### iii. Freedom To Petition The Government To Redress Grievances Protects The Right To Record Police Officers.

The First Amendment also protects "the right of the people…to petition the Government for a redress of grievances." U.S. CONST., AMEND. I. Litigation is one constitutionally protected way in which individuals may petition the government for redress of grievances, because a court is the forum in which legal rights are vindicated. *Chen v. Holder*, 607 F.3d 511, 513 (7th Cir. 2010). Therefore, the Supreme Court has firmly established that the First Amendment also protects, as an aspect of the right to petition, an individual's right to access to the courts. *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 896-97 (1984); *see also BE & K Cont. Co. v. N.L.R.B.*, 536 U.S. 516, 517 (2002) ("The right to petition is one of the most precious liberties safeguarded by the Bill of Rights."). A state actor's efforts to impede an individual's access to the courts may give rise to a constitutional claim against the state actor. *Harrell v. Cook*, 169 F.3d 428, 432 (7th Cir. 1999). For example, when police officers conceal or obscure important facts about a crime from its victims, rendering hollow the

right to seek redress, constitutional rights are undoubtedly abridged. *Id.*; *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)).

Here, Plaintiff has alleged that he took out his cell phone camera because he feared the police officer was going to engage in misconduct and he wanted to document his harassment by police. Without the ability to record his interactions with police, Plaintiff is forced to engage in a credibility contest with police officers – a contest often skewed in the officers' favor. Because the Act prohibits him from collecting this evidence, it violates his right to petition the government for redress of grievances.

### 3. The Government Cannot Justify The Illinois Eavesdropping Act's Restrictions On First Amendment Protected Activities.

"Any way you look at it, the Illinois eavesdropping statute burdens speech and press rights and is subject to heightened First Amendment scrutiny." *Alvarez*, 679 F.3d at 600. According to the Seventh Circuit, the Act is subject to intermediate scrutiny, and likely cannot survive it. *Id.* at 604. There are several slightly different standards of intermediate scrutiny, but all have three essential elements in common. *Id.* at 605. "All require (1) content-neutrality (content-based regulations are presumptively invalid); (2) an important public-interest justification for the challenged regulation; and (3) a reasonably close fit between the law's means and its ends." *Id.* The Seventh Circuit has explained that the Illinois Eavesdropping Act is probably content-neutral. *Id.* However, the Act fails the rest of the intermediate scrutiny test because it burdens public speech in situations where there is no legitimate expectation of privacy.

### i. The Illinois Eavesdropping Act Fails The Narrow-Tailoring Test.

Because the Illinois Eavesdropping Act statute restricts protected First Amendment activity, the Government bears the burden of proving that it is narrowly-tailored to achieve an important governmental interest: "the burden on First Amendment rights must not be greater than necessary

to further the important governmental interest at stake." *Id.* (citing *Bd. of Trustees of State University of New York v. Fox*, 492 U.S. 469, 480 (1989)); *Heffron v. ISKCON*, 452 U.S. 640, 658 (1981); *Chicago Cable Comm'ns v. Chicago Cable Comm'n*, 879 F.2d 1540, 1580 (7th Cir. 1989).

There is no important governmental interest in criminalizing the First Amendment activity at issue here because it does not intrude on anyone's privacy. Plaintiff wants to record his own conversations with police officers, and police officers' communications in this context lack any reasonable expectation of privacy. *Id.* at 606 (citing *Katz v. U.S.*, 389 U.S. 347, 351 (1967)). Thus, the Illinois Eavesdropping Act does not exist to protect anyone's legitimate privacy interests.

Furthermore, recording police officers in the manner such as Plaintiff seeks to do in this case is otherwise lawful. Such recording does not diminish effective law enforcement. The audiovisual record may, in fact, advance police effectiveness. Plaintiff plans to record openly, giving police notice that they are being recorded. *Id.* at 607. If police officers know they are being recorded, it may improve the accuracy and reliability of reports of their encounters with citizens.

The Illinois eavesdropping statute does not advance any legitimate government interest because it protects no one's privacy or safety, and does nothing to improve law enforcement. Therefore, the Act fails the narrow-tailoring requirement of intermediate scrutiny.

### ii. The Illinois Eavesdropping Act Also Fails The Alternative Channels Test.

In addition to narrow tailoring, a "time, place, or manner" restriction on speech like the Illinois Eavesdropping Act must also "leave open ample alternative channels for communication of the information" to survive intermediate scrutiny. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). By criminalizing all non-consensual audio recording of conversations, the Act bans an entire medium of recording and communication. This medium is especially useful because "audio and audiovisual recording are uniquely reliable and powerful methods of preserving evidence and disseminating news. Their self-authenticating character makes it highly unlikely that other methods

could be considered reasonably adequate substitutes." *Alvarez*, 679 F.3d at 607. Under the current version of the Act, it is impossible for Plaintiff and other citizens to create any recording of their public interactions with on-duty police officers with audio sound. Without this ability, if Plaintiff is arrested and charged by police in the future, he will be forced to engage in a credibility contest with police in court without an objective audiovisual record of what happened. Thus, by cutting citizens off from all audio and audiovisual devices, the Act leaves no other means for citizens to publicly record on-duty police with sound. The statute, therefore, fails the alternative channels test.

The Illinois Eavesdropping Act is neither narrowly tailored to achieve a legitimate governmental interest, nor does it leave open alternative channels to communicate in the medium of an audio recording. Consequently, the Act as applied here fails the intermediate scrutiny test, and is unconstitutional.

### 4. Defendant Madigan Has Conceded the Act's Unconstitutionality As Applied To Plaintiff.

In similar prior litigation, Defendant Madigan vigorously defended the constitutionality of the Illinois Eavesdropping Act, but she has not taken such a position in the instant case. *PSOF*, at ¶22. In fact, Defendant Madigan now says a prosecution as it applies to Plaintiff and his desire to record his conversations with police officers would "run afoul of the First Amendment." *Def. Madigan's Mem.*, at 1. Because Defendant Madigan has conceded that the Act is unconstitutional as applied to such recordings, there is nothing left for the parties to argue, and Plaintiff is entitled to summary judgment on Count I.

In *Wynn v. Scott*, 449 F. Supp. 1302 (N.D. Ill. 1978), one of the plaintiffs was a woman who sought an abortion without her husband's consent, in violation of the Illinois Abortion Act of 1975. *Wynn*, 449 F. Supp. at 1306. She filed a § 1983 action against the Attorney General of Illinois and the State's Attorney of Cook County, in which she challenged the constitutionality of the Abortion Act's

spousal consent requirement. *Id.* at 1305-06. Plaintiff won a preliminary injunction against the Act and then moved for summary judgment. *Id.* at 1305.

After the parties fully briefed plaintiff's motion for summary judgment, the Supreme Court decided *Planned Parenthood Association of Missouri v. Danforth*, 428 U.S. 52 (1976), which declared unconstitutional a Missouri abortion statute that also required spousal consent. *Wynn,* 449 F. Supp. at 1305. Both parties then filed supplemental briefs analyzing the impact of *Danforth* on their case. *Id.* In their supplemental briefs, defendants conceded that the spousal consent requirement of the Illinois Abortion Act was unconstitutional based on the Supreme Court's decision in *Danforth. Id.* at 1317. The court found that there was no genuine issue of material fact on the constitutional claim and, in light of defendants' concessions that the spousal consent requirement was unconstitutional, granted summary judgment for plaintiff, and declared the spousal consent requirement of the Illinois Abortion Act unconstitutional. *Id.*[1]

*Wynn* should guide the Court here. Just as in that case, Plaintiff is challenging the constitutionality of a state law. Just like the defendants in *Wynn*, Defendant Madigan has conceded that the challenged statue is unconstitutional and has not even tried to defend its constitutionality in this litigation in light of federal authority that strongly suggests the statute is unconstitutional – *ACLU v. Alvarez*. Because of defendants' concession that the challenged statute in *Wynn* was unconstitutional, the district court in that case needed only four sentences of analysis to grant summary judgment for plaintiff. *Id.* The Court's decision here should be just as simple. Defendant Madigan has conceded that the Illinois Eavesdropping Act is unconstitutional as applied here, the Seventh Circuit has indicated the statute is "likely unconstitutional" and the material facts are not in dispute. Therefore, this Court should grant summary judgment for Plaintiff on Count I.

---

[1] Defendants appealed the district court's decision in *Wynn v. Carey*, 599 F.2d 193 (7th Cir. 1979), in which the Seventh Circuit adopted the district court's reasoning on the constitutionality of the Illinois Abortion Act of 1975 with minimal discussion. *Carey*, 599 F.2d at 194.

**C. This Court Has The Authority To, And Should, Grant Immediate Declaratory And Statewide Injunctive Relief.**

Currently, this case stands in a sort of legal limbo in which Defendant Madigan does not wish to defend the constitutionality of the Illinois Eavesdropping Act, whilst Plaintiff and others like him are prevented from engaging in First Amendment protected activity by the fear of still being arrested and prosecuted for recording police officers pursuant to a law that is still in effect. Other people, like Plaintiff, have been prosecuted all over Illinois for recording police officers like Plaintiff did. *PSOF*, at ¶18. This Court has the duty to protect Plaintiff and other Illinois citizens from being "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be a constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel*, 415 U.S. at 462.

Plaintiff now stands in exactly the position the *Steffel* court described. He wishes to exercise his First Amendment right to audio record police officers when they are on duty and in public, but the Illinois Eavesdropping Act prohibits him from doing so, lest he be arrested and prosecuted again. Despite Defendant Madigan's promise not to prosecute him, this law is still valid and he cannot be expected to trust that every police officer or prosecutor he may encounter has been instructed to disregard this law and leave Kristofer DuMelle alone. The Seventh Circuit's decision in *ACLU v. Alvarez* has provided this Court with solid authority to declare the Illinois Eavesdropping Act unconstitutional as applied to the public recording of on-duty police officers and to issue a permanent statewide injunction against its enforcement.

**1. This Court Should Grant Plaintiff Declaratory Relief Now.**

Plaintiff submits that this Court has the authority to, and should, declare the Illinois Eavesdropping Statute unconstitutional now. If this Court remains silent on the Eavesdropping Act's constitutionality, law enforcement agencies across Illinois will remain ignorant of the Act's

chilling effect on citizens' exercise of First Amendment rights. Declaring the Illinois Eavesdropping Act unconstitutional is the proper course of action because a declaration of unconstitutionality as applied to any person, statewide, will have the binding force needed to fully protect Plaintiff's First Amendment rights.

Only this Court, not Defendant Madigan, has the power to grant Plaintiff real remedies on his claim in Count I. Congress has assigned this Court the "paramount role" of protecting constitutional rights, *Steffel*, 415 U.S. at 473, and has given this Court the Federal Declaratory Judgment Act as a tool to fulfill that role. Specifically, Congress intended that declaratory judgment "be utilized to test the constitutionality of state criminal statutes." *Id.* at 466. Declaratory relief is valuable to Plaintiff even though it cannot make the unconstitutional Act disappear. *Id.* at 469. This Court's declaration that the Illinois Eavesdropping Act is unconstitutional will force police and prosecutors to rethink the enforcement of this Act, and also will ensure any future plaintiffs a viable false arrest claim for its enforcement. *Id.* at 470. It will also reduce the Act's deterrence of Plaintiff from exercising his First Amendment rights, not only in Hanover Park, but also in other cities and counties in Illinois that Plaintiff may wish to visit. Therefore, the Court should use its authority under the Declaratory Judgment Act to protect Plaintiff's First Amendment right to record police officers anywhere in Illinois by declaring the Act unconstitutional.

**2. This Court Should Also Issue A Permanent Statewide Injunction Prohibiting The Enforcement of the Eavesdropping Act For Audio Recording On-Duty Police Officers.**

In addition to declaratory relief, Plaintiff respectfully requests that this Court enter a permanent injunction barring enforcement of the Illinois Eavesdropping Act in Illinois in situations where a person records a police officer in public performing his official duties, speaking at a volume that could be overheard with the unassisted human ear, and in a manner that is otherwise lawful. An

injunction is appropriate here because every day that the Act remains in effect, it deters Plaintiff (and

others) from exercising First Amendment rights.

To obtain a permanent injunction, a plaintiff must show "(1) success, as opposed to a

likelihood of success, on the merits; (2) irreparable harm; (3) that the benefits of granting the

injunction outweigh the injury to the defendant; and (4) that the public interest will not be harmed

by the relief requested." *ADT Sec. Srvcs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th

Cir. 2012) (quoting *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003)). Plaintiff has satisfied all

four factors and is entitled to a permanent injunction.

At the outset, the Seventh Circuit has held "[t]he loss of First Amendment freedoms is

presumed to constitute an irreparable injury for which money damages are not adequate, and

injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal

Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Further, Plaintiff has established success on the

merits of his First Amendment claim. A citizen's act of audio recording the publically audible

conversations of police officers carrying out their public duties in public places is a constitutional

right, as shown in Section III above. In fact, Defendant Madigan no longer even contests this point.

The Seventh Circuit's decision in *ACLU v. Alvarez* is the only federal authority on the Illinois

Eavesdropping Act, and it clearly states that the Act is "likely unconstitutional" as applied to the

recording of on duty police officers in public. *Alvarez*, 679 F.3d at 608. In addition, the benefits of

granting the injunction outweigh any alleged injury to Defendant Madigan. As discussed in Section

III above, the Act does nothing to protect on-duty police officers' privacy or safety when they are

performing their public duties and speaking at a volume audible to the unassisted ear. By contrast, if

the Court enters the requested injunction, Plaintiff and citizens like him will no longer need to fear

arrest and prosecution for exercising their First Amendment rights. Thus, this Court should enter a

permanent injunction against the enforcement of the Illinois Eavesdropping Act as applied to the recording of on-duty police officers in public.

## CONCLUSION

Contrary to Defendant Madigan's assertion, this Court has jurisdiction over the parties and the subject matter of this litigation, and Defendant Madigan's motion to dismiss should be denied. Moreover, this Court should also grant Plaintiff's motion for partial summary judgment. The court's task is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Plaintiff respectfully submits that there is no need for a trial or any other proceeding on Plaintiff's First Amendment claim because the facts that support his claim are not disputed. With the Seventh Circuit's decision in *Alvarez*, the Supreme Court of the United States' refusal to review that decision, and the ruling by another district court that the Act is unconstitutional as applied to the ACLU program, this Court has the federal authority it needs to decide Plaintiff's First Amendment claim now. Plaintiff respectfully requests that this Court:

(1) deny Defendant Madigan's Motion to Dismiss;

(2) grant partial summary judgment in Plaintiff's favor on Count I;

(3) declare the Illinois Eavesdropping Act unconstitutional as applied to the recording of on-duty police officers in public; and

(4) issue a statewide permanent injunction prohibiting the enforcement of the Act against persons who audio record on-duty police officers.

Respectfully submitted,

/s/ Torreya L. Hamilton
Attorney for Plaintiff

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452

Chicago, Illinois 60604
312.726.3173
Atty. No. 6229397