**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTOFER DUMELLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 13-CV-1575 |
| vs. | ) | |
| | ) | Hon. Amy J. St. Eve |
| | ) | |
| VILLAGE OF HANOVER PARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ATTORNEY GENERAL MADIGAN'S REPLY IN SUPPORT OF
HER MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**INTRODUCTION**

Plaintiff's claim against Attorney General Madigan, which challenges the constitutionality of the Illinois Eavesdropping Act's ban on audio-recording police officers, should be dismissed. (Dkt. No. 16) Plaintiff cannot satisfy Article III's "case or controversy" requirement, his claim is moot, and his claim is barred by the Eleventh Amendment, because there is no legitimate risk that the Attorney General will enforce the Act against him:

- **State and federal courts have already declared the Act unconstitutional.** At least four state-court judges have declared the Act unconstitutional, and Judge Johnson Coleman of the Northern District also declared the Act unconstitutional in *ACLU v. Alvarez*, after the Seventh Circuit strongly questioned the Act's constitutionality and the United States Supreme Court denied certiorari. (Dkt. No. 16 at 2-3)

- **The Attorney General has represented in writing that she will not enforce the Act against plaintiff.** The Attorney General has repeatedly and unequivocally represented that she will not prosecute or assist in any prosecution of plaintiff under the Act, because any such prosecution would violate the First Amendment. (Dkt. Nos. 16 at 1, 4; 38 at 3; 45 at 1) The Attorney General made the same representation in *Frobe v. Village of Lindenhurst et al.*, and her motion to dismiss is pending. (Dkt. No. 16 at 3)

1

- **The Attorney General has no legal authority to initiate a prosecution under the Act, and cannot "assist" the Cook County State's Attorney in any prosecution under the Act.**  Plaintiff does not dispute that the Attorney General has no legal authority to initiate prosecutions under the Act.  At most, the Attorney General can "assist" the State's Attorneys in their prosecutions, and this cannot happen here (even aside from her representation), because the only State's Attorney named as a defendant—Cook County State's Attorney Anita Alvarez—has agreed to a permanent injunction preventing her from enforcing the Act. (Dkt. Nos. 16 at 8; 29 at ¶ 2; 45 at ¶ 2)

- **The Attorney General has never prosecuted or assisted in any prosecutions under the Act.**  The Attorney General has never prosecuted anybody under the Act, nor has she assisted in any prosecutions under the Act.  In *People v. Allison*, the Attorney General intervened, at the court's request, to file a brief addressing the constitutionality of the Act, at a time when no court in Illinois had decided the issue.  The court declared the Act unconstitutional, and the Attorney General did not pursue an appeal.  (Dkt. No. 16 at 4)

## ARGUMENT

Controlling Seventh Circuit precedent requires dismissal of plaintiff's claim against Attorney General Madigan.  In *Wisconsin Right to Life v. Schober*, 366 F.3d 485 (7th Cir. 2004), the Seventh Circuit held that "***a case is moot when a state agency acknowledges that it will not enforce a statute because it is plainly unconstitutional***," which is exactly the case here.  *Id.* at 492 (emphasis added).  In his response, plaintiff fails to distinguish *Wisconsin Right to Life*, completely ignores the other Seventh Circuit cases cited in the Attorney General's motion,[1] and instead relies on inapposite, easily distinguishable cases from other jurisdictions.

---

[1]Plaintiff ignores *Ragsdale v. Turnock*, 841 F.2d 1358, 1365-66 (7th Cir. 1988) (holding that "the State's [previously] non-publicized policy of non-enforcement" mooted a challenge to an abortion regulation); *520 S. Mich. Ave. Assoc., Ltd. v. Devine*, 433 F.3d 961, 963-64 (7th Cir. 2006) (noting that that if the defendants had "represented that they would not prosecute" the plaintiff, "there would indeed be no live controversy, because there would not be a 'credible threat of prosecution'"); and *ACLU v. Alvarez*, 679 F.3d 583, 592-93 (7th Cir. 2012) (permitting a lawsuit similar to plaintiff's to go forward only after noting that the State's Attorney had not "foresworn the possibility of prosecuting" the plaintiff under the Act).

In his response, plaintiff advances five arguments in an attempt to avoid dismissal, and each one fails:

*First,* plaintiff acknowledges that multiple state courts have declared the Act unconstitutional, that a Northern District court has declared the Act unconstitutional, and that the Seventh Circuit deemed the Act "likely unconstitutional," but still claims there is no "clarity" because "neither the Illinois Supreme Court nor any Appellate Court has had occasion to issue a binding opinion on the Eavesdropping Act's constitutionality." (Dkt. No. 42 at 1-2) But mootness doctrine includes no such requirement, as *Wisconsin Right to Life* confirms. Just as in this case, the plaintiff in *Wisconsin Right to Life* challenged the constitutionality of a state statute (Wisconsin's campaign finance law), and the defendant (the Wisconsin State Elections Board) represented that it would not enforce the statute, after a Northern District judge, in a case not involving the plaintiff, found the statute unconstitutional. 366 F.3d at 487-88.

Calling the plaintiff's claim seeking to enjoin a statute already declared unconstitutional "highly unusual," the Seventh Circuit held that there was no Article III "case or controversy" and that the plaintiff's claim was also moot. *Id.* at 489-92. The Seventh Circuit did not say its ruling hinged on the existence of the Northern District decision, but, in any event, it certainly made no difference that an *appellate* court had not decided the constitutionality of the challenged statute. And here, in addition to a Northern District decision declaring the Act unconstitutional (based on Seventh Circuit and U.S. Supreme Court precedent, *see* Dkt. No. 16, Ex. D), we have multiple state-court decisions doing the same, plus a Seventh Circuit decision deeming the Act "likely unconstitutional." (Dkt. No. 42 at 1)

***Second***, plaintiff repeatedly points out that the Act is still "on the books," and argues that the "continued existence" of the Act "alone" entitles him to declaratory and injunctive relief against the Attorney General. (Dkt. No. 42 at 7-9)[2] But plaintiff's argument is again foreclosed by *Wisconsin Right to Life,* where the Seventh Circuit affirmed dismissal of the plaintiff's claim as moot "***in spite of the failure of the legislature to remove the statute from the books***." 366 F.3d at 492 (emphasis added); *see also Ragsdale,* 841 F.2d at 1365-66 (affirming dismissal of claim as moot even though the challenged statute remained in force).

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012), which plaintiff cites, does not show otherwise. In *Bell*, the plaintiff had standing to challenge a disorderly conduct ordinance that he had been charged with violating. *Id.* at 449-50. But *Bell* is not relevant here, because the defendants in that case did not promise not to prosecute the plaintiff, much less make that promise because of legitimate constitutional concerns. Mootness was not an issue in *Bell*, as it is here.

***Third***, plaintiff contends that his claim against Attorney General Madigan is not moot because "prosecutors" have enforced the Act against others and the Cook County State's Attorney—who is now permanently enjoined from enforcing the Act—attempted to prosecute him. (Dkt. No. 42 at 5-7)[3] For the entire State of Illinois, plaintiff cites only instance following the Seventh Circuit's decision *ACLU v. Alvarez* where someone was

---

[2] SB 1575, which is currently pending, would amend the Act to permit the audio-recording of police officers performing a public duty in a public place if the conversation is audible to the unassisted human ear. (Dkt. No. 16, Ex. E)

[3] Plaintiff notes that this Court's order enjoining the Cook County State's Attorney from enforcing the Act "does not protect…First Amendment activity in any of the other 101 counties in Illinois." (Dkt. No. 42 at 1-2) But the Cook County State's Attorney is the *only* State's Attorney named as a defendant in this lawsuit. Thus, any relief granted in this lawsuit could not bind the other State's Attorneys, who are not parties.

arrested pursuant to the Act. (Dkt. Nos. 1 at ¶ 16; 44 at ¶ 18) More important for purposes of the present motion, plaintiff does not cite a *single instance* where Attorney General Madigan prosecuted someone under the Act. Plaintiff claims that the Attorney General was "part of the prosecution team in the downstate eavesdropping case of Michael Allison" (Dkt. No. 42 at 7), but this is false. In *People v. Allison*, the Crawford County State's Attorney brought the eavesdropping charge against Allison, and the Attorney General merely intervened, at the court's request, to file a brief addressing the constitutionality of the Act, at a time when no Illinois court had decided the issue, and before *ACLU v. Alvarez* came down. (Dkt. No. 16, Ex. A at 1) The court declared the Act unconstitutional, and then, less than three weeks after another Illinois court also declared the Act unconstitutional, the Attorney General voluntarily dismissed her appeal. (Dkt. No. 44 at ¶¶ 26-27)

If anything, the Attorney General's conduct in *People v. Allison*—specifically, her decision not to pursue an appeal—bolsters her position that plaintiff's claim is moot. *Wisconsin Right to Life* is again instructive. There, the Wisconsin State Elections Board had previously defended the constitutionality of the statute that the plaintiff challenged, *see Wisconsin Realtors Ass'n v. Ponto*, 233 F. Supp.2d 1078 (W.D. Wis. 2002), and after the court declared the statute unconstitutional, the Board did not appeal.[4] 366 F.3d at 490. In the Seventh Circuit's view, the Board had "implicitly" conceded the statute's unconstitutionality by not appealing, and this supported its mootness argument. *Id.* The

---

[4] Plaintiff tries to distinguish *Wisconsin Right to Life* by arguing that the "Wisconsin Attorney General," unlike Attorney General Madigan, always maintained that the challenged statute was unconstitutional. (Dkt. No. 16 at 7) This misses the mark. The defendant in *Wisconsin Right to Life* was *not* the Wisconsin Attorney General, but rather the State Elections Board, which had initially defended the constitutionality of Wisconsin's campaign finance law before representing that it would not enforce the law.

Attorney General's voluntary dismissal of her appeal in *People v. Allison* likewise supports her mootness argument here.

*Fourth*, plaintiff argues that despite the Attorney General's representation, his claim is not moot because, he speculates, the Attorney General could "change [her] mind," or she could leave office, creating the possibility that her predecessor might renege on her representation. (Dkt. No. 42 at 9-11) As an initial matter, plaintiff's concerns are unfounded because plaintiff does not dispute that the Attorney General has no *legal authority* to initiate a prosecution under the Act, and it is *impossible* for her to "assist" Cook County State's Attorney Alvarez (again, the only State's Attorney named as a defendant) in any prosecution under the Act, because Alvarez is permanently joined from enforcing the Act. (Dkt. Nos. 16 at ¶ 8; 29 at 2; 45 at ¶ 2) The risk of prosecution is zero in these circumstances.

Moreover, plaintiff's speculation cannot establish an Article III "case or controversy" and does not allow him to escape the mootness doctrine. In *Wisconsin Right to Life*, Wisconsin State Board of Elections initially *refused* to assure the plaintiff that it would not enforce the challenged campaign finance law. *Id.* at 488. After the plaintiff filed suit, however, the Board "hastily issued a letter to [the plaintiff] indicating that it would not enforce the law against the organization," and the Seventh Circuit held that this mooted the plaintiff's claim. *Id.* at 488, 492. The Seventh Circuit did not engage in speculation about the Board changing its mind, or the Board's members being replaced, but instead noted that "when the defendants are public officials," courts "place greater stock in their acts of self-correction, so long as they appear genuine." *Id.* at 492; citing *Fed'n of Advertising Indus. Reps., Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th

Cir. 2003); *see also Neblock Trucking, Inc. v. Scott*, 725 F. Supp. 2d 728, 732-33 (N.D. Ill. 2010).

Plaintiff cites a number of cases, almost all from other jurisdictions, that are easily distinguishable. Plaintiff claims that he is in the "exact same position" as the plaintiff in *Ward v. Utah*, 321 F.3d 1266 (10th Cir. 2003), but he is not. Unlike plaintiff here, the plaintiff in *Ward* was given "no assurances" that he would not be charged under the challenged statute. *Id.* at 1268; *see also Kucharek v. Hanaway*, 902 F.2d 513, 518 (7th Cir. 1990) (noting that the Attorney General had "not committed himself" to denying approval of prosecutions based on his "surprising" and "implausible" interpretation of the challenged statute); *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1106 (6th Cir. 1995) (noting that it was "not at all clear" what representations the defendant city made regarding its enforcement of the challenged ordinance, and that its enforcement procedure violated the constitution in any event).

Plaintiff also argues, incorrectly, that his case is "analogous" to *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987). In *Wilson*, the Oklahoma Attorney General "allegedly did not intend" to enforce the challenged statute, but his nebulous, backward-looking statement of intent, unlike Attorney General Madigan's unequivocal representation in this case, was *not* based on legitimate concerns about the statute's constitutionality. To the contrary, the Oklahoma Attorney General maintained that "the statute at issue is constitutional," making it easier for him to change course. *Wilson*, 819 F.2d at 946; *see also Brown v. Herbert*, 2012 WL 35800669, at *4 (D. Utah Aug. 17, 2012) (defendant's non-prosecution policy was just a "strategic attempt…to evade

review," and was not shown to be "necessary to avoid bringing an unconstitutional suit" against the plaintiffs).[5]

Plaintiff, finally, relies on a line of inapposite cases holding that the government cannot moot a suit challenging a statute merely by adopting an interpretation of the statute narrower than its plain language. *See Citizens for Responsible Government State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1193 (10th Cir. 2000) (plaintiffs were "clearly covered by the plain language of the statute"); *see also Vermont Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000); *United States v. Stevens*, 130 S. Ct. 1577, 1590-91 (2010). Here, Attorney General Madigan's representation that she will not prosecute or assist in any prosecutions of plaintiff under the Act is not based on a subjective interpretation of the Act, but instead is backed up by multiple court decisions declaring the Act unconstitutional.

*Fifth*, plaintiff claims that he can avoid the Attorney General's Eleventh Amendment immunity without establishing a "threat" that she will enforce the Act against him. (Dkt. No. 42 at 12-15) But once again, plaintiff's argument is flatly contradicted by the cases cited in the Attorney General's motion, which plaintiff does not address. In *Ex Parte Young*, the United States Supreme Court recognized an exception to Eleventh Amendment immunity in suits seeking to enjoin state officers from enforcing

---

[5] In *Brown*, the court noted that "[o]n at least two occasions, the Tenth Circuit has found that a categorical announcement from a government attorney that no prosecutions would be brought under a particular statute was sufficient to moot a challenge to the constitutionality of the statute." *Id.* at *1. Other cases cited by plaintiff also support Attorney General Madigan's position. *See, e.g.*, *Lopez v. Candaele*, 630 F.3d 775, 791-92 (9th Cir. 2010) (noting that a dean's "statement that no action will be taken against students for expressing their opinions is entitled to significant weight, and vitiates [the plaintiff's] claim that he faces a credible threat of enforcement"); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("We have held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement.").

allegedly unconstitutional acts if the officer has "some connection" to the enforcement of the act *and* "threatens" to enforce the act. 209 U.S. 123, 155-57 (1908) (explaining that state officers "clothed with some duty in regard to the enforcement of the laws of the state, *and who threaten and are about to commence proceedings*…may be enjoined") (emphasis added). This "threat of enforcement" requirement has been "repeatedly applied" by federal courts "across the county," *Okalabi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001), including by courts in the Northern District. (Dkt. No. 16 at 9-10) The Attorney General's motion cites ten cases, including two from the Northern District, applying the requirement; plaintiff addresses none of them.

Instead, plaintiff cites *Entertainment Software Association v. Blagovich*, 469 F.3d 641 (7th Cir. 2006), noting that it "does not mention a threat to enforce requirement." (Dkt. No. 42 at 14-15) But plaintiff's "inference from silence" argument fails; the Seventh Circuit had no need to address the requirement in *Entertainment Software* because the defendants did not make that argument.[6] As the Attorney General explained in her opening brief, *Entertainment Software* dealt only with *Ex Parte Young*'s "some connection" requirement, and the "threat of enforcement" requirement is separate and independent. (Dkt. No. 16 at 8 n.5, citing *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996))

Finally, while plaintiff (incorrectly) denies the existence of a "threat of enforcement" requirement, he agrees that to avoid the Attorney General's Eleventh Amendment immunity, he must show at least *some* risk that the Attorney General will enforce the Act against him. According to plaintiff, he must "show that his fear of

---

[6] Thus, courts have applied the "threat of enforcement" requirement after the Seventh Circuit decided *Entertainment Software*. *See CSWS v. Madigan*, 2009 WL 1789368, at *2-3 (N.D. Jun. 24, 2009).

consequences is not imaginative or speculative." (Dkt. No. 42 at 14) But plaintiff has not made such a showing here, nor can he, given the multiple cases declaring the Act unconstitutional; the Attorney General's unequivocal representation, in light of these cases, that she will not prosecute or assist in any prosecution of plaintiff under the Act; the Attorney General's lack of legal authority to initiate prosecutions under the Act; and the impossibility of her "assisting" a State's Attorney that has been permanently enjoined from enforcing the Act.

## CONCLUSION

For the foregoing reasons, and those in Attorney General Madigan's memorandum in support of her motion to dismiss, this Court should dismiss plaintiff's claim against the Attorney General, with prejudice, for lack of jurisdiction and/or failure to state a claim.

Dated: May 16, 2013

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

/s/ Michael T. Dierkes

Michael T. Dierkes
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-3000

Counsel for Attorney General Madigan